UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX LUCERO,<br>　　　　Petitioner,<br>　v.<br>VINCENT CULLEN,<br>　　　　Respondent. | No. 2:12-cv-0957-MCE-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner, a state prisoner proceeding with counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent moves to dismiss the petition as successive and for failure to state a claim. ECF No. 34. For the reasons set forth below, the court finds the petition successive and recommends that the motion be granted.

**I.    Background**

Petitioner filed this action pro se on March 14, 2012 challenging his 1996 conviction for second degree murder. ECF No. 1. He relies on a 2009 change in California law. Petitioner argues that his murder conviction was obtained in violation of due process because the jury was instructed on felony murder, a theory upon which he could not be convicted under California law as clarified by the California Supreme Court in 2009, and because the trial court failed to provide an instruction on imperfect self-defense, a theory which negates the malice element of (non-felony-murder) second-degree murder. *Id.* at 7-11.

The underlying facts in this case are not in dispute. *See* ECF No. 1-1 at 7. The California Court of Appeals recited them as follows in petitioner's direct appeal:

/////

1

Defendant George Tabios, Jr. (hereinafter referred to as defendant Tabios or George), [wa]s a teenager and, at the time of this incident, lived with his family in Stockton. Family members had previously been harassed, threatened, and physically attacked by a local gang known as Li'l Unity. In November 1994, the family's house was riddled with more than 20 shots from a drive-by shooting. The house was shot at on a subsequent occasion as well.

Sometime after midnight on March 26, 1995, several teenagers in the Tabios family gathered outside the house to socialize with friends. George remained inside with his friend, defendant Felix Lucero. A car drove slowly down the street, passed the house, and then turned around. Several of the teenagers were sure the car was occupied by members of Li'l Unity intent on shooting at the Tabios house. One of George's cousins ran inside, yelling to George and Lucero that Li'l Unity was "rolling up." George and Lucero ran out of the house, armed with rifles pulled from under George's bed.

The car started toward the Tabios house but then backed up when one of the occupants shouted a warning upon seeing the guns. Three shots were fired at the car, two by Tabios and one by Lucero. One of the bullets fired by Tabios killed one of the car's passengers, David Ware.

Defendants hid their guns in a truck parked in the Tabios backyard.

The occupants of the car were not in fact members of Li'l Unity. They were on the Tabios's block to visit a friend and were having trouble finding the correct address.

Defendants were arrested and charged with Ware's murder and two counts of the attempted murder of the other occupants of the car. Tabios was prosecuted as the person who actually shot Ware, and Lucero was prosecuted as an aider and abettor.

The prosecutor offered alternative theories of liability, including premeditated first degree murder, second degree murder based on an inherently dangerous act, and second degree felony murder. Under the latter theory, the prosecutor contended the underlying offense, shooting into an occupied car ([California Penal Code] § 246), could properly be characterized as an inherently dangerous felony.

Defendants asserted they fired their guns because they feared a drive-by shooting, and meant only to scare the car away. Their arguments centered on a claim of imperfect self-defense, and they urged a verdict of manslaughter. Alternatively, Lucero also argued that he should be acquitted because he had not aided or abetted Tabios.

The jury convicted both defendants of one count of second degree murder and two counts of attempted murder, and found defendants personally used a rifle in the commission of the murder.

The court sentenced both defendants to prison terms of fifteen years to life for the murder, and added an additional three-year sentence for defendant Lucero and an additional four-year sentence for defendant Tabios for the firearm enhancements.

*People v. Tabios*, 67 Cal. App. 4th 1, 5-6 (1998).

**A.      Direct Appeal and State Habeas Petitions**

In his direct appeal, Lucero argued, among other things, that he was improperly deprived of an opportunity to assert a claim of imperfect self-defense[1] to felony murder and that the underlying felony and the murder "merge," precluding conviction for second degree felony murder. *Id.* at 6. The court of appeal rejected these arguments. First, it concluded that imperfect self-defense is inapplicable in a felony murder case, because it negates malice, an element which need not be proven to obtain a conviction for felony murder. *Id.* at 6-9. The court explained that under California law:

> The felony-murder rule generally acts as a substitute for the mental state ordinarily required for the offense of murder . . . . Ordinarily, when a defendant commits an unintentional killing, a murder conviction requires a showing that he acted with implied malice. [Citation.] With the felony-murder rule, however, such malice need not be shown." (*People v. Patterson* (1989) 49 Cal.3d 615, 626 [emphasis and parallel cite omitted.]) The Patterson court reasoned that the second degree felony-murder doctrine acts as a substitute for implied malice, and eliminates the need for the prosecution to establish the mental component required for the offense of murder. ( *Ibid*.)

67 Cal. App. 4th at 8. The court additionally noted that, by convicting petitioner of attempted murder, the jury had necessarily found that he acted with express malice, and therefore would have resolved a claim of imperfect self-defense against him. *Id.* at 9 n.2. Second, the court found that California Supreme Court precedent (namely *People v. Hansen*, 9 Cal. 4th 300 (1994)) precluded petitioner's claim that violation of § 246 merges with any resulting murder and thus cannot be the basis of a felony-murder conviction. *Id.* at 11. The California Supreme Court denied petitioner's request for review. ECF No. 33 at 6.

---

[1] Under California law "[t]he doctrine of self-defense embraces two types: perfect and imperfect." *People v. Rodarte,* 223 Cal. App. 4th 1158, 1168, 168 (2014). "Perfect" self-defense requires that a defendant have an honest and reasonable belief in the need to defend himself or another. *Id*. Imperfect self-defense "is the killing of another human being under the actual but unreasonable belief that the killer was [in] imminent danger of death or great bodily injury. [Citation.] Such a killing is deemed to be without malice and thus cannot be murder." *People v. Iraheta,* 227 Cal. App. 4th 611, 620 (2014), quoting *People v. Booker,* 51 Cal.4th 141, 182 (2011). "Imperfect self-defense is therefore a 'theor[y] of partial exculpation' that reduce[s] murder to manslaughter by negating the element of malice." *Id.* (quoting *People v. Moye,* 47 Cal. 4th 537, 549 (2009)).

Petitioner's state habeas petitions (one in the Superior Court, one in the Court of Appeal, one in the Supreme Court) were similarly unsuccessful and ended in 2000. *Id.* at 6, 8-9.

### B.     Prior Federal Petition

Petitioner then filed a federal petition for writ of habeas corpus in this court. *Lucero v. Hubbard*, E.D. Cal. Case No. 2:00-cv-01365-JKS. In that action, petitioner presented a somewhat disorganized series of arguments, including claims that: (1) he should have been allowed to present an imperfect self-defense theory to negate the charge of felony murder, (2) that the prosecution should have been required to prove malice to obtain his second degree murder conviction, and (3) "there was a de facto merger of Penal Code § 246 into murder, precluding the use of the second degree felony murder rule." ECF No. 33 at 19-22, 32. The court rejected these claims on the merits in 2004. *Id.* at 67-68. In doing so, the court noted that, under California law, "when a defendant is charged with felony murder, the defense of imperfect self-defense is simply irrelevant because it disproves an element—malice—that is imputed through the felony-murder rule." *Id.* at 67. "Thus, the trial court was correct in not instructing the jury on imperfect self-defense." *Id.* The court further noted that the jury convicted petitioner of two counts of attempted murder, and thus had to have found that, in shooting at the car, he acted with malice, as the Court of Appeal had noted in petitioner's direct appeal. *Id.* at 68.

Things changed in 2009. The California Supreme Court significantly revised California law with respect to its "merger doctrine." *People v. Chun*, 45 Cal. 4th 1172 (2009). In *Chun*, the prosecution also sought to impose second-degree murder liability on the defendant on a felony-murder theory predicated on violation of § 246. *Id.* at 1179. Defendant was convicted of second-degree murder. *Id.* On appeal, he contended that a violation of § 246 merges with any resulting murder and thus may not be used for purposes of felony murder. *Id.* at 1180. The California Supreme Court agreed, overruling its own precedent and clarifying California law as to what felonies merge and thus cannot support a felony-murder instruction. *Id.* at 1188-1201. In doing so, the court expressly disapproved of the Court of Appeal's decision in petitioner's direct appeal.

/////

/////

4

1  *Id.* at 1199.  One consequence of *Chun* is that, to obtain a second-degree murder conviction
2  against a defendant who is accused of shooting at an occupied vehicle, the state must prove that
3  the defendant acted with malice.

    **C.**        **Second Federal Petition**

Petitioner then filed another state habeas petition in the Court of Appeal.  *In re Lucero*, 200 Cal. App. 4th 38 (2011).  The court held that *Chun* should be applied retroactively to petitioner's case.  *Id.* at 45-46.  Nevertheless, it concluded that petitioner had not suffered prejudice from the instructional error in his case.  *Id.* at 48-52.  It reaffirmed its observation in *Tabios* that, to convict petitioner of attempted murder, as the jury did, the jury necessarily had to find that he acted with malice in shooting at the car.  *Id.* at 50-51.  "Hence, this is a case where other aspects of the verdict leave no reasonable doubt that the jury made the findings necessary for conscious-disregard-for-life malice."  *Id.* at 51 (internal quotation marks omitted).  The court accordingly denied the petition and left petitioner's verdict and sentence intact.  *Id.* at 52 ("*Chun* . . . does not entitle petitioner Lucero to a new trial.").  Petitioner sought review by the California Supreme Court, which was denied on February 1, 2012.  California Courts' Case Information Search Page, http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=1998952&doc_no=S198444 (last visited August 14, 2014).

This petition followed on March 14, 2012.  ECF No. 1.  Respondent moved to dismiss the petition as "second or successive" under 28 U.S.C. § 2244(b), a portion of the legislation known as the Antiterrorism and Effective Death Penalty Act, or "AEDPA."  ECF No. 14.  "Under the gatekeeping provisions of 28 U.S.C. § 2244(b)(2), '[a] claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed' except under certain, narrow circumstances."  *Panetti v. Quarterman,* 51 U.S. 930, 942 (2007) (quoting §§ 2244(b)(2)(A)-(B)).  The undersigned found the instant petition to be successive and recommended that the motion to dismiss be granted because petitioner had not obtained leave from the Court of Appeals to proceed under 28 U.S.C. § 2244(b)(3).  ECF No. 25.

/////

5

1  The then-assigned district judge[2] agreed that "this does appear to be a second or successive
2  petition, requiring leave from the Ninth Circuit." ECF No. 26 at 1-2. Rather than dismiss the
3  petition outright, however, the court appointed counsel for petitioner, stayed the action, and
4  ordered petitioner's counsel to apprise the court as to whether leave to file a successive petition
5  would be sought in the Court of Appeals. *Id.* at 2-3.

6  Petitioner, now with counsel, sought leave from the U.S. Court of Appeals for the Ninth
7  Circuit to file a successive petition. ECF No. 30. The Ninth Circuit denied leave on November
8  21, 2013, finding that petitioner had not shown that the petition was based on (1) a new, and
9  retroactive, rule of constitutional law or (2) newly-discovered facts, as § 2244(b)(2) requires.
10 *Lucero v. Beard*, Ninth Cir. Case No. 13-71660, ECF No. 13 at 1.[3] Nevertheless, the court noted
11 that the petition, while second in time, may not constitute a "second or successive" petition barred
12 by § 2244(b). *Id.* at 2. Citing to *Magwood v. Patterson*, 561 U.S. 320 (2010) and *Panetti v.*
13 *Quarterman*, 551 U.S. 930, the court noted that the instant petition may fall outside the definition
14 of "second or successive" either because the claim it raises was not ripe at the time of the first
15 petition or because it challenges a new judgment or sentence entered pursuant to the California
16 Court of Appeal's decision in *In re Lucero*, 200 Cal. App. 4th 38 (2011). *Id.* at 2-3. This court
17 must now determine whether the petition falls outside of the scope of § 2244(b) for those reasons.

18 **II.   The Petition Is "Second or Successive" under AEDPA**

19 There is no question in this case that the instant petition was preceded by a prior federal
20 petition. The statute provides that: "A claim presented in a second or successive habeas corpus
21 application under section 2254 that was presented in a prior application shall be dismissed." 28
22 U.S.C. § 2244(b). Further, a district court lacks jurisdiction to hear a "second or successive"
23 petition unless the Court of Appeals has given the petitioner leave to proceed because the petition

---

[2] This action was originally assigned to Senior U.S. District Judge Lawrence K. Karlton. Due to Judge Karlton's retirement, this action was reassigned to Chief Judge Morrison C. England, Jr. on August 27, 2014. ECF No. 41.

[3] The parties neglected to submit a copy of the November 11, 2013 order by the Ninth Circuit. The citation is to this ECF No. for the Ninth Circuit docket and a copy of the order is reproduced and attached to these findings and recommendations.

6

is based on a new and retroactive rule of constitutional law or new facts.  28 U.S.C. § 2244(b)(2); *Panetti*, 551 U.S. at 942.

The U.S. Supreme Court has concluded, however, that some second petitions are exempt from § 2244's definition of "second or successive."  *Magwood*, 561 U.S. at 341-42; *Panetti*, 551 U.S. at 943-44; *Slack v. McDaniel*, 529 U.S. 473, 486-87 (2000); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 645 (1998).  Of relevance here, a petition challenging a new judgment intervening between the first and second petition is not "second or successive" under § 2244 (*Magwood*), nor is a petition raising an unripe competency-to-be-executed claim, the factual basis of which did not arise until after the first petition (*Panetti*).

Thus, the question presented here is whether the change in California law in 2009 as it relates to Lucero can qualify as a new intervening judgment exempting Lucero from the second or successive rule that would otherwise bar this petition.  Respondent argues that there is no new judgment in this action and therefore *Magwood* would not apply.  Petitioner does not dispute that the California Court of Appeal did not vacate his judgment or sentence, but argues that "there has effectively been a new state court decision recognizing that significant error occurred in Lucero's case that should be analogized to *Magwood*." ECF No. 36 at 8.  The rationale offered by petitioner is that the state court did find error in denying Lucero a jury finding on the specific element of malice for a second degree murder conviction even though that error was determined to be harmless.  But the Supreme Court in *Magwood* instructed that "both § 2254(b)'s text and the relief it provides indicate that the phrase 'second or successive' must be interpreted with respect to the judgment challenged."  561 U.S. at 332-33.  Lucero does not articulate a principled basis for discounting the fact that, unlike the petitioner in *Magwood*, Lucero's original judgment has not been vacated or amended.  The distinction is not insignificant.  *Cf. Wentzell v. Neven*, 674 F.3d 1124, 1126-27 (9th Cir. 2012) (holding that *Magwood*'s reasoning applies to judgments that have been amended as well as those entered after the original judgment was vacated).  The California Court of Appeal expressly left Lucero's original judgment intact, finding that the error had not prejudiced the jury's verdict.  *Lucero*, 200 Cal. App. 4th at 48-52 (holding that the felony murder instruction in petitioner's case "was harmless beyond a reasonable doubt" and "does not

7

1   entitle petitioner Lucero to a new trial."). Accordingly, petitioner may not benefit from the rule
2   of *Magwood*. *Accord Styers v. Ryan*, No. CV-12-2332-PHX-JAT, 2013 U.S. Dist. LEXIS
3   60148, at *9-10 (D. Ariz. Apr. 25, 2013).

4   Whether petitioner may benefit from *Panetti* is a stickier question. In that case, the
5   petitioner claimed in a second-in-time habeas petition that he was not competent to be executed
6   (commonly known as a *Ford* claim, *see, Ford v. Wainwright*, 477 U.S. 399 (1986)). 551 U.S. at
7   934-35, 942. While the petition was literally "second or successive," the Supreme Court declined
8   to interpret § 2244's use of that phrase so narrowly. *Id.* at 943-44. Instead, the Court held that
9   "Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to
10  govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based
11  incompetency claim filed as soon as that claim is ripe." *Id.* at 945.

12  The court provided several reasons for its holding. First, it noted that *Ford* claims do not
13  become ripe until execution is imminent, which is generally long after the time for filing the first
14  petition has passed. *Id.* at 943. Under Supreme Court precedent, a *Ford* claim that was raised in
15  that first petition, although unripe, could be raised again in a later petition once it had ripened. *Id.*
16  (discussing *Stewart v. Martinez-Villareal*, which allowed a second-in-time petition raising a *Ford*
17  claim that had been raised in an earlier petition but was, at the time of that earlier petition, unripe
18  for adjudication). Thus, the Court explained, if it were to find Panetti's second-in-time petition
19  "second or successive" under § 2244, individuals sentenced to death would be required to file
20  premature *Ford* claims in their initial petitions as a matter of course, as a formality to preserve the
21  claims. *Id.* The court noted that his approach "would add to the burden imposed on courts,
22  applicants, and the States, with no clear advantage to any." *Id.*

23  Second, the Court noted that, in the past, it had found certain second-in-time petitions to
24  fall outside § 2244's ambit, citing *Slack v. McDaniel* (in which the Court concluded that a
25  second-in-time petition was not "second or successive" after the first petition had been dismissed
26  for failure to exhaust state remedies) and *Martinez-Villareal*. *Id.* at 943-45.

27  Third, the Court looked to the purposes behind AEDPA, which it described as "comity,
28  finality, and federalism," as well as "conservation of judicial resources." *Id.* at 945. That statute

8

should not be interpreted in a way "that would produce troublesome results, create procedural anomalies, and close our [federal court] doors to a class of habeas petitioners seeking review without any clear indication that such was Congress' intent." *Id.* at 946 (internal quotation marks omitted). Precluding a second-in-time petition raising a *Ford* claim as soon as that claim became ripe would not further AEDPA's purposes, because: (1) it would require petitioners to file those claims prematurely in order to preserve them (under *Martinez-Villareal*), a clear waste of judicial resources, and (2) it would not promote finality because it would simply cause petitioners to file unripe *Ford* claims, thus preserving the claim to be raised when it became ripe. *Id.*

Fourth, the Court considered whether the petition would have constituted an "abuse of the writ" under pre-AEDPA law. *Id.* at 947. The Court found that *Ford* claims raised in successive petitions at the time execution is imminent were not considered abusive under its prior practice as well as that of lower federal courts. *Id.*

In the instant case, the court must determine whether a second-in-time petition containing a claim based on state law that has been significantly altered in the interval between petitions presents a situation sufficiently analogous to that presented in *Panetti* to warrant exempting Lucero's second petition from the requirements of 28 U.S.C. § 2244(b)(2).

Lucero argues that his current claim, which he identifies as a "*Chun* claim," was never brought in the initial petition. Respondent argues that the claim was indeed raised and ruled on in the prior petition. Respondent characterizes that claim as follows: that Due Process was violated when the jury instructions wrongfully allowed the jury to convict petitioner of murder without finding malice, because a felony-murder instruction was given but petitioner's underlying felony (shooting at an occupied vehicle) merges with the killing, precluding conviction under a felony-murder theory and thus requiring proof of malice to obtain a murder conviction.

Both parties are correct, in their own way.[4] As noted in the above background summary, petitioner's claim in his initial petition, although somewhat poorly articulated, did argue that: (1) he should have been allowed to present an imperfect self-defense theory to negate the charge of

---

[4] However, it is largely irrelevant whether the claim was presented in the earlier petition in light of the statutory construction analysis addressed below.

felony murder, (2) the prosecution should have been required to prove malice to obtain his second degree murder conviction, and (3) "there was a de facto merger of Penal Code § 246 into murder, precluding the use of the second degree felony murder rule."[5]  ECF No. 33 at 19-22, 32.  In ruling on the petition, the district judge found that, under California law as it existed at that time, imperfect self-defense was irrelevant to the felony murder charge because it negated malice, which was not an element of felony murder.  *Id.* at 67.  But the judge also found that, in any event, the jury had found that petitioner acted with malice in shooting at the car, because it had convicted him of two counts of attempted murder, a charge that carries malice as an element.  *Id.* at 68.

It is nevertheless true that, before the California Supreme Court's decision in *Chun*, the legal basis for the claim was weak-to-nonexistent, and accordingly the claim was repeatedly rejected—by the state courts and by the district judge in the first petition—as foreclosed by state law prevailing at the time.  The ripeness of the claim was not dependent upon changed facts, but, arguably, on a change in California law.  Thus, petitioner has not had an opportunity to present a legally-sound "merger" argument in federal court.

The question remains whether, under *Panetti*, this second petition may be exempted from the statutory bar of successive petitions because of the intervening change in California law as to a claim of imperfect self-defense in a felony murder prosecution.  The Ninth Circuit has concluded that the reasoning of *Panetti* is not limited to *Ford*-type (i.e. capacity to be executed) claims.  *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011); *United States v. Lopez*, 577 F.3d 1053, 1063-64 (9th Cir. 2009).  In determining whether *Panetti* may be extended into the context presented here (that is, where a second-in-time claim is based on a relevant change in state law), the court must look to the considerations relied on by the Supreme Court in *Panetti*:

---

[5] Indeed, petitioner has been making this "merger" argument all along.  Long before the federal petition, petitioner argued in his direct appeal that violation of California Penal Code § 246 merges with the killing and thus cannot be the basis of a felony murder conviction.  *Tabios*, 67 Cal. App. 4th at 11 (opinion on petitioner's direct appeal, addressing and rejecting this argument).  But the argument failed because even assuming such error in Lucero's case it was deemed harmless due to the jury's necessary finding of malice in the attempted murder convictions based on shooting into the car.


whether finding the petition "second or successive" would (1) lead to troublesome results, procedural anomalies, or the closing-off of federal review without a clear indication that Congress so intended; (2) further AEDPA's purposes of comity, finality, federalism, and conservation of judicial resources; (3) preclude a petition that would not have constituted an "abuse of the writ" in pre-AEDPA times. *Lopez*, 577 F.3d at 1063-64.

This case is unlike *Panetti* in that no intervening legal precedent would allow the second-in-time petition to be heard so long as the now-ripe claim had been included in the initial petition. (In *Panetti*, the precedent was *Martinez-Villareal*.) Thus, barring the instant petition would not lead to the troublesome and wasteful anomaly of petitioners filing unripe claims (or claims unsupported by current state law) in order to preserve those claims in case the law later changed.

In addition, there is little textual support for Lucero's argument. The statutory language of § 2244 indicates Congress' intent that certain claims based on changed law be allowed in successive petitions, implying that other changed-law claims are not permitted. Section 2244(b)(2)(A) expressly authorizes the Courts of Appeals to allow "second or successive" petitions based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." In enacting that section, Congress clearly considered claims premised on changed law. If the court were to find that all such claims were "unripe" *à la Panetti* prior to the change and thus not "second or successive," § 2244(b)(2)(A) would be surplusage. No petitioner would need permission from the Courts of Appeals to proceed with a claim based on a new constitutional rule, because such claims would be considered to fall outside the ambit of § 2244 entirely. It is a well-known canon of statutory construction that statutes should be construed so that no clause is rendered superfluous. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Notably, the situation presented in *Panetti* did not implicate either of § 2244(b)'s escape hatches, because the claim was not based on changed law or facts that would have undermined the conviction; instead the claim was based on facts regarding mental competency at execution. *See Lopez*, 577 F.3d at 1065-66. Thus, finding Panetti's claim outside § 2244's definition of "second or successive" did not render any statutory language useless.

/////

As for AEDPA's purposes, finality would be served by barring second-in-time petitions based on changed state law. This construction of "second or successive" may also be said to serve the purposes of comity and federalism, by allowing the state courts to have the final say on claims premised on changed state law. However, such a construction of § 2244 may also preclude federal review of some potentially meritorious claims that could not have been presented earlier, "certainly not an AEDPA goal." *Lopez*, 577 F.3d at 1065. In addition, the instant petition likely would not have been considered an abuse of the writ prior to AEDPA, because the legal support for petitioner's instant claim was nonexistent prior to *Chun*. *See Rose v. Lundy*, 455 U.S. 509, 520-21 (1982) (noting that a petitioner abuses the writ when he or she deliberately withheld the later-asserted claims at the time of the first petition).

With all of these considerations in view, the statutory language of § 2244 provides the most compelling evidence that second-in-time federal petitions based on intervening changes in state law are "second or successive" under that statute. Section 2244(b)(2)(A) strongly indicates Congress' intent to permit "second or successive" petitions based on changed law only for changes in *constitutional* law. The instant petition, which is based on changed *state* law, should be considered impermissibly "second or successive" under § 2244. Indeed, the Supreme Court has suggested in dicta just such a reading of § 2244. In *Gonzalez v. Crosby*, the Court held that Rule 60(b) motions containing "claims" in habeas cases must be treated as new habeas petitions subject to § 2244. 545 U.S. 524, 530-32 (2005). Justice Scalia, writing for the court, stated that, if the court held otherwise, "a Rule 60(b) motion based on a purported change in the substantive law governing the claim could be used to circumvent § 2244(b)(2)(A)'s dictate that the only new law on which a successive petition may rely is 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'" *Id.* at 531-32.

The conclusion that the instant petition falls within § 2244's definition of "second or successive" is additionally bolstered by the few federal court decisions addressing the issue. The Seventh Circuit has, in discussing *Panetti*'s ripeness rule, distinguished between "genuinely unripe claims (where the factual predicate that gives rise to the claim has not yet occurred) from

12

those in which the petitioner merely has some excuse for failing to raise the claim in his initial petition (such as when newly discovered evidence supports a claim that the petitioner received ineffective assistance of counsel)." *United States v. Obeid*, 707 F.3d 898, 902 (7th Cir. 2013). "[O]nly the former class of petitions escapes classification as 'second or successive.'" *Id.* Thus, in *In Re Page*, the Seventh Circuit directed the district court to dismiss a second-in-time petition as successive even though it was premised on state law that had changed in the interval between the federal petitions. 170 F.3d 659, 660-62 (7th Cir. 1999). Similarly, the Third Circuit in *Johnson v. Wynder* concluded that a claim based on an intervening change in state law was "second or successive," noting that the fact "that a legal argument is unlikely to succeed, or is even futile, does not make it unripe." 408 F. App'x. 616, 619 (8th Cir. 2010). And in *Moore v. Swarthout*, a district judge flatly concluded, "There is no exception relieving second-in-time petitions from § 2244(b)'s requirements based on new state law and ripeness." No. C 11-02905 JSW, 2012 U.S. Dist. LEXIS 11355. at *2 (N.D. Cal. Jan. 31, 2012). This court agrees. The language of § 2244 strongly indicates that second-in-time federal habeas petitions raising claims based on changed state law are "second or successive."

**III.    Rule 60(b)**

Petitioner urges, in the alternative, that the court construe the instant petition as a motion under Federal Rule of Civil Procedure 60(b) for reconsideration of the denial of petitioner's first petition, decided a decade ago. That rule provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

1          (6) any other reason that justifies relief.

2 A Rule 60(b) motion must be made within one year of the judgment, if based on subsections (1),

3 (2), or (3), or otherwise within a reasonable time. Fed. R. Civ. P. 60(c).

4          Petitioner's argument is based on a recent, unpublished Ninth Circuit opinion in a similar

5 case. In *Robertson v. Walker*, the petitioner had argued in his original petition that it was error for

6 the jury to be instructed on felony murder because the underlying felony, grossly negligent

7 discharge of a firearm under California Penal Code § 246.3, merged with the homicide.

8 *Robertson v. Walker*, N.D. Cal. Case No. 4:10-cv-2633-PJH, ECF No. 1 at 4. The district court

9 rejected the argument based on California law as it existed at that time and denied the petition.

10 *Id.* The Ninth Circuit then issued a memorandum opinion denying the petitioner's appeal,

11 "rest[ing] its decision on California law as articulated by the California Supreme Court in

12 Robertson's direct appeal, which allowed a conviction for second degree felony murder to be

13 premised upon a jury's determination that the killing was committed in the course of discharging

14 a firearm in a grossly negligent manner." 543 F. App'x. 722, 723 (9th Cir. 2013) (internal

15 citation omitted). Between the issuance of the opinion and the issuance of the mandate, the

16 California Supreme Court decided *Chun* and expressly overruled its decision in the petitioner's

17 direct appeal. *Id.* The petitioner then filed a second federal habeas petition (after going again

18 through the state courts) raising the same claim but now relying on *Chun*. *Id.* at 722-23; N.D.

19 Cal. Case No. 4:10-cv-2633-PJH, ECF No. 1. The district court dismissed the petition as second

20 or successive under § 2244. *Id.*, ECF No. 32. Back on appeal, the Ninth Circuit did not upset the

21 district court's conclusion that the petition was second or successive. *Robertson,* 543 F. App'x. at

22 723-24. Instead, on those "unique facts," the court ordered the district court to construe the

23 second petition as a motion under Rule 60(b) for reconsideration of the denial of the first petition.

24 *Id.* at 723. In its brief rationale for this unusual order, the court relied on several parenthetically-

25 described cases for the propositions that: (1) "a challenge to a habeas proceeding is properly

26 brought as a Rule 60(b) motion if it attacks 'not the substance of the federal court's resolution of

27 a claim on the merits, but some defect in the integrity of the federal habeas proceedings'" (*id.,*

28 citing *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)); (2) "a Rule 60(b) motion can be used to

challenge an underlying judgment because of an error of law" (*id.,* citing *Evans v. Indep. Order of Foresters*, 141 F.3d 931, 932 (9th Cir. 1998)); and (3) "in certain circumstances, a Rule 60(b) motion may rely on a change in law that occurred even after the original decision became final" (*id.*, citing *Phelps v. Alameida*, 569 F.3d 1120, 1132 (9th Cir. 2009)). The court characterized Robertson's petition "as challenging the issuance of a mandate when the panel relied on California law that had been overruled, which is a challenge appropriately brought under Rule 60(b)." *Id.* The court then expressly found that the petition, construed as a Rule 60(b) motion, was timely under Rule 60(c) because it was filed two months after the California Supreme Court denied the petitioner relief based on *Chun*. *Id.*

While petitioner seeks to benefit from *Robertson*, this case does not present the same procedural flaw the Ninth Circuit identified in that case; that is, the issuance of the mandate based on state law that had since been overruled. Rather, the proceedings in petitioner's federal habeas case had ended several years prior to the time the *Chun* decision issued.

Importantly, because the petition raises a substantive rather than procedural claim, to do what petitioner asks would require that the court directly disregard the Supreme Court's holding in *Gonzalez.* As mentioned earlier, the Supreme Court in that case determined that, in habeas cases, a Rule 60(b) motion that contains a "claim"—that is, "an asserted basis for relief from a state court's judgment of conviction"—must be treated as a successive petition subject to the constraints of § 2244. 545 U.S. at 530-33. If this court were to construe the instant petition as a Rule 60(b) motion, it would then, under *Gonzalez*, have to turn back around and treat that Rule 60(b) motion as a successive petition, which would then, by petitioner's logic, turn into again a Rule 60(b) motion, and so on in an endless loop. The result would be an absurd exercise.

The petition is successive under § 2244 and accordingly it must be dismissed.

**IV.    Conclusion and Recommendation**

For the foregoing reasons, it is hereby RECOMMENDED that respondent's February 7, 2014 motion to dismiss (ECF No. 34) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: September 12, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

FILED

NOV 21 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FELIX LUCERO,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>JEFFREY BEARD, Secretary of the California Department of Corrections and Rehabilitation,<br><br>　　　　　Respondent. | No. 13-71660<br><br><br><br>ORDER |

Before: SILVERMAN, BYBEE, and CHRISTEN, Circuit Judges.

This is an application for authorization to file a second or successive 28 U.S.C. § 2254 habeas corpus petition in the district court. Petitioner has not made a prima facie showing under 28 U.S.C. § 2244(b)(2) that:

> (A) the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

hmb/MOATT

However, it is not clear that this is a "second or successive" 28 U.S.C. § 2254 habeas corpus petition requiring prior authorization by this court, where petitioner has not had a prior opportunity to present a federal habeas petition under the correct version of California law following the issuance of *People v. Chun*, 45 Cal. 4th 1172 (2009) (holding that Cal. Penal Code § 246 cannot be a predicate offense to support second-degree felony-murder conviction).

The California Court of Appeal denied petitioner's post-*Chun* habeas corpus petition, concluding that *Chun* should apply retroactively and that the jury was erroneously instructed on the felony-murder rule in petitioner's case, but that any instructional error was not prejudicial. *In re Lucero*, 200 Cal. App. 4th 38 (2011), *review denied*, No. S198444 (Cal. Feb. 1, 2012). Petitioner's claim, that the state court unreasonably applied the law to determine that his federal constitutional rights had not been violated, has not yet been reviewed (nor could it have been reviewed) by the federal courts. It is for the district court to determine whether the California state court's application of *Chun* to petitioner's case may be analogous to a new judgment, such that *Magwood* would apply, or whether this petition falls within the scope of the exception described in *Panetti* for a second-in-time petition raising a claim that would have been unripe had petitioner presented it in his first federal habeas petition. *See Magwood v. Patterson*, 561 U.S. 320 (2010)

(discussing the meaning of the phrase "second or successive," and holding that the first federal habeas petition to challenge a new state-court judgment after resentencing is not "second or successive" such that § 2244(b) would apply); *Panetti v. Quarterman*, 551 U.S. 930 (2007) (holding that § 2244 was not intended to bar a second-in-time habeas petition filed as soon as that claim was ripe).

The application for authorization to file a second or successive 28 U.S.C. § 2254 habeas corpus petition in the district court is **DENIED.**